**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION**

DAVID JAMES NETTLES,

          Plaintiff,

    v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,[1]

          Defendant.

CIVIL ACTION NO.: 5:17-cv-14

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff contests the decision of Administrative Law Judge John R. Mason ("the ALJ" or "ALJ Mason") denying his claim for Supplemental Security Income. Plaintiff urges the Court to reverse the ALJ's decision and remand for an award of benefits or, in the alternative, remand for a new hearing. Defendant asserts that the Commissioner's decision should be affirmed. For the reasons which follow, I **RECOMMEND** the Court **AFFIRM** the Commissioner's decision and **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.

## BACKGROUND

Plaintiff filed an application for Supplemental Security Income on July 31, 2012, alleging disability beginning on August 1, 2007, due to "stroke, difficulty balancing, hip problems, high blood pressure, [and] depression." (Doc. 10-3, pp. 2.) After his claim was denied initially and upon reconsideration, Plaintiff filed a timely request for a hearing. On May 29, 2015, ALJ

---

[1] The current Acting Commissioner of Social Security is Nancy A. Berryhill. Accordingly, the Court **DIRECTS** the Clerk of Court to replace Defendant Carolyn W. Colvin with Nancy A. Berryhill upon the docket and record of this case.

Mason conducted a hearing in Savannah, Georgia, at which Plaintiff, who was represented by counsel, appeared and testified.  (Doc. 10-2, p. 13.)  James Waddington, a vocational expert, also appeared at the hearing.  (Id.)  ALJ Mason found that Plaintiff was not disabled within the meaning of the Social Security Act, 42 U.S.C. §§ 301, *et seq.* ("the Act").  The Appeals Council denied Plaintiff's request for review of the ALJ's decision, and the decision of the ALJ became the final decision of the Commissioner for judicial review.  (Doc. 10-2, pp. 2–4.)

Plaintiff, born on March 9, 1980, was thirty-five (35) years old when ALJ Mason rendered his decision.  (Doc. 10-2, p. 23.)  Plaintiff completed the ninth grade and does not have a General Equivalency Diploma ("GED").  (Doc. 10-2, p. 34.)  Plaintiff's past relevant work experience involved construction.  (Doc. 10-2, pp. 40–41; Doc. 10-6, pp. 41–44.)

## DISCUSSION

### I.    The ALJ's Findings

Title II of the Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Act qualifies the definition of disability as follows:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]

42 U.S.C. § 423(d)(2)(A).  Pursuant to the Act, the Commissioner has established a five-step process to determine whether a person is disabled.  20 C.F.R. §§ 404.1520 & 416.920; Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

The first step determines if the claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140. If the claimant is engaged in substantial gainful activity, then benefits are immediately denied. Id. If the claimant is not engaged in such activity, then the second inquiry is whether the claimant has a medically severe impairment or combination of impairments as defined by the "severity regulation." 20 C.F.R. §§ 404.1520(c) & 416.920(c); Yuckert, 482 U.S. at 140–41. If the claimant's impairment or combination of impairments is considered severe, then the evaluation proceeds to Step Three. The third step requires a determination of whether the claimant's impairment meets or equals one of the impairments listed in the Code of Federal Regulations ("the Regulations") and acknowledged by the Commissioner as sufficiently severe to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) & 416.920(d); 20 C.F.R. Pt. 404, Subpt. P. App. 1; Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004). If the impairment meets or equals one of the listed impairments, the plaintiff is presumed disabled. Yuckert, 482 U.S. at 141.

If the impairment does not meet or equal one of the listed impairments, the sequential evaluation proceeds to the fourth step. At Step Four, a determination is made as to whether the impairment precludes the claimant from performing past relevant work, i.e., whether the claimant has the residual functional capacity ("RFC") to perform past relevant work. Id.; Stone v. Comm'r of Soc. Sec., 503 F. App'x 692, 693 (11th Cir. 2013). A claimant's residual functional capacity "is an assessment . . . of the claimant's remaining ability to do work despite his impairments." Id. at 693–94 (ellipsis in original) (quoting Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)). If the claimant is unable to perform his past relevant work, the final step of the evaluation process determines whether he is able to make adjustments to other work in the national economy, considering his age, education, and work experience. Phillips, 357 F.3d at

1239.  Disability benefits will be awarded only if the claimant is unable to perform other work. Yuckert, 482 U.S. at 142.

In the instant case, the ALJ followed this sequential process to determine that Plaintiff did not engage in substantial gainful activity since July 31, 2012, the application date. (Doc. 10-2, p. 15.)  At Step Two, the ALJ determined that Plaintiff had the following conditions considered "severe" under the "severity regulation," 20 C.F.R. § 404.1520(c): history of a cerebrovascular accident; coronary artery disease and status post myocardial infarction; chronic obstructive pulmonary disease; dementia; a cognitive disorder; and history of substance abuse. (Id.)  At the next step, the ALJ determined that Plaintiff's medically determinable impairments did not meet or medically equal a listed impairment under the Regulations.  (Id. at pp. 15–17.) ALJ Mason found that Plaintiff had the RFC to perform sedentary work, except he cannot engage in constant reaching or overhead reaching with the left upper extremity and is limited to repetitive, short cycle work.  (Id. at p. 17.)  Additionally, the ALJ limited Plaintiff from working in environments with concentrated exposure to dust, fumes, gases, and poor ventilation and to avoid unprotected heights and dangerous machinery.  (Id.)  At Step Four, ALJ Mason noted Plaintiff was unable to perform his past relevant work in construction.  (Id. at p. 21.)  However, the ALJ concluded at the fifth and final step that Plaintiff could perform the jobs of semiconductor assembler, surveillance systems monitor, and credit reference clerk, all of which are sedentary jobs that exist in significant numbers in the national economy.  (Id. at p. 22.)

## II.    Issues Presented

Plaintiff contends that the ALJ did not properly consider whether he met the criteria for Listing 12.05C for intellectual disability.  (Doc. 12, pp. 8–9.)  Plaintiff also contends that the ALJ failed to incorporate his mental limitations within the RFC.  (Id. at pp. 7–8.)  Finally,

Plaintiff alleges that the ALJ failed to calculate Plaintiff's work capacity under a regional standard.  (Id. at p. 10.)

### III.     Standard of Review

It is well-established that judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence," and whether the Commissioner has applied appropriate legal standards.  Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).  A reviewing court does not "decide facts anew, reweigh the evidence or substitute" its judgment for that of the Commissioner.  Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005).  Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence.  Id.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved.  The evidence relied upon must be relevant evidence which a reasonable mind would find adequate to support a conclusion.  Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1260 (11th Cir. 2007).  The substantial evidence standard requires more than a scintilla but less than a preponderance of evidence.  Dyer, 395 F.3d at 1210.  In its review, the court must also determine whether the ALJ or Commissioner applied appropriate legal standards. Failure to delineate and apply the appropriate standards mandates that the findings be vacated and remanded for clarification.  Cornelius, 936 F.2d at 1146.

### IV.     Whether Substantial Evidence Supports the ALJ's Finding that Plaintiff Did Not Meet Listing 12.05C

Plaintiff asserts that the ALJ improperly failed to consider the applicability of Listing 12.05C for intellectual disability when conducting Step Three of the evaluation.  (Doc. 12, pp. 8–9.)  Plaintiff argues that, despite the ALJ determining his mental impairments were severe under

the "severity regulation," the ALJ failed to analyze whether those impairments met Listing 12.05C under the Regulations. (Id.) Plaintiff contends that, without that evaluation, the Court must remand.

Defendant responds that the ALJ did not have to explicitly address Listing 12.05C because the ALJ implicitly found that Plaintiff did not meet the criteria and substantial evidence in the record supports this finding. (Doc. 13, pp. 4–11.) In particular, Defendant avers the ALJ considered Plaintiff's low IQ scores, but no medical source ever diagnosed Plaintiff with an intellectual disability. (Id. at p. 7.) Moreover, Defendant contends the ALJ determined, as supported by the record, that Plaintiff did not have the requisite IQ score for the period of time required by Listing 12.05C. (Id. at pp. 9–10.) Furthermore, Defendant contends that Plaintiff's lack of credibility in detailing his medical history, inconsistency between the reported IQ scores, and presentation to medical personnel weighed into the ALJ's determination that Plaintiff did not meet the criteria for Listing 12.05C. (Id. at pp. 8–11.)

A claimant must provide specific evidence—such as medical signs, symptoms, or laboratory-test results—showing that his impairment meets or medically equals a listed impairment to be presumed disabled at Step Three. Sullivan, 493 U.S. at 530. "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Arrington v. Soc. Sec. Admin., 358 F. App'x 89, 93 (11th Cir. 2009) (citing Sullivan v. Zebley, 493 U.S. 521, 530 (1990)).

The ALJ's finding as to whether a claimant does or does not meet a listed impairment need not be explicit and may be implied from the record. Hutchison v. Bowen, 787 F.2d 1461, 1463 (11th Cir. 1986) (holding the ALJ implicitly found the claimant did not meet a Listing

because it was clear from the record that the ALJ had considered the relevant law and evidence). Furthermore, although the ALJ must consider the Listings in making his disability determination, he is not required to recite mechanically the evidence leading to his ultimate determination. Bellew v. Acting Comm'r of Soc. Sec., 605 F. App'x 917, 920 (11th Cir. 2015) (internal citation omitted).

To meet Listing 12.05 ("intellectual disability"[2]), "a claimant must at least (1) have significantly subaverage general intellectual functioning; (2) have deficits in adaptive behavior; and (3) have manifested deficits in adaptive behavior before age 22." Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir. 1997). These requirements are referred to as the Listing's "diagnostic description." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00 ("Listing 12.05 contains an introductory paragraph with the diagnostic description for [intellectual disability].").[3] In addition to satisfying the diagnostic description, a claimant must meet one of the four sets of diagnostic criteria in paragraphs A through D of the listing. Id. Under paragraph C, a claimant must show: 1) "[a] valid verbal, performance, or full scale IQ of 60 through 70"; and 2) "a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C.

A valid IQ score of 60 to 70 creates a rebuttable presumption that the claimant manifested "a fairly constant IQ throughout [the claimant's] life." Hodges v. Barnhart, 276 F.3d

---

[2] Effective September 3, 2013, the Social Security Administration replaced the term mental retardation with the term intellectual disability as a listed impairment. Change in Terminology: "Mental Retardation" to "Intellectual Disability," 78 Fed. Reg. 46499-01 (Aug. 1, 2013) (to be codified at 20 C.F.R. Pt. 404, Subpt. P, App. 1). This change was made because "the term 'mental retardation' has negative connotations," and "has become offensive to many people." Id. at 46499. This change "d[id] not affect the actual medical definition of the disorder or available programs or services." Id. at 49500. "So while the ALJ, whose decision issued before the change took effect, and the parties use the old terminology, we follow the agency's new nomenclature." Frame v. Comm'r, Soc. Sec. Admin., 596 F. App'x 908, 910 n.2 (11th Cir. 2015).

[3] The Court cites to the Listing criteria that were in effect at the time of the ALJ's decision on July 2, 2015.

1265, 1268 (11th Cir. 2001). Thus, "a claimant who shows that his IQ is in the range of 60 through 70 and that he has a 'physical or other mental impairment imposing an additional and significant work-related limitation of function' has satisfied the requirements of Listing 12.05C unless the Commissioner can rebut the <u>Hodges</u> presumption." <u>Rudolph v. Comm'r, Soc. Sec. Admin.</u>, 709 F. App'x 930, 933 (11th Cir. 2017) (citation omitted).

The <u>Hodges</u> presumption may be rebutted "where the IQ score is inconsistent with other evidence in the record on the claimant's daily activities and behavior." <u>Lowery v. Sullivan</u>, 979 F.2d 835, 837 (11th Cir. 1992) (citing <u>Popp v. Heckler</u>, 779 F.2d 1497, 1499 (11th Cir. 1986)); <u>see also</u> <u>Hodges</u>, 276 F.3d at 1269 ("[T]he Commissioner may present evidence of Hodges' daily life to rebut this presumption of mental impairment."). In particular, the ALJ may find the IQ results incredible for purposes of Listing 12.05C "where the test results are inconsistent with the medical record *or* the claimant's daily activities and behavior." <u>Nichols v. Comm'r, Soc. Sec. Admin.</u>, 679 F. App'x 792, 796 (11th Cir. Feb. 8, 2017) (emphasis added).

Although ALJ Mason did not explicitly address Plaintiff's impairment under Listing 12.05C, he implicitly found that Plaintiff did not meet the criteria by reaching the fourth and fifth steps of the disability analysis. <u>See</u> <u>Hutchinson</u>, 787 F.2d at 1463 ("[T]he ALJ, in reaching the fourth and fifth steps of the disability analysis, implicitly found that appellant did not meet any of the Appendix 1 impairments.") This determination is supported by substantial evidence.

First, the medical record rebuts the presumption that Plaintiff had the requisite mental impairment. Although Plaintiff had IQ scores within the 60 to 70 range when he was tested in 2008, 2011, and 2013, the medical record does not show that Plaintiff was ever diagnosed with an intellectual disability. (Doc. 10-8, pp. 51–53, 88–89; Doc. 10-16, pp. 21–22.) This lack of diagnosis provides substantial evidence that Plaintiff's impairments did not fulfill the criteria for

Listing 12.05C.  See Smith v. Comm'r of Soc. Sec., 535 F. App'x 894, 897–98 (11th Cir. 2013) ("The fact that none of the other treatment records diagnosed [the claimant] with [intellectual disability] supports the ALJ's rejection of the IQ test results and supports the conclusion that [the claimant] did not meet or equal the criteria of Listing 12.05(C).")  Furthermore, the record shows that Plaintiff was diagnosed at multiple points with borderline intellectual functioning, (doc. 10-8, pp. 51–53, 88–89; doc. 10-16, pp. 21–22), which is "mutually exclusive of [intellectual disability]."  Jordan v. Comm'r of Soc. Sec., 470 F. App'x 766, 769–70 (11th Cir. 2012).

Second, Plaintiff's daily activities and behavior also rebut the presumption that he had the requisite mental impairment.  The ALJ observed that Plaintiff only had mild restrictions in daily activities.  (Doc. 10-2, p. 16.)  Plaintiff was "able to fix meals, perform some chores, pay bills, and take care of all activities of personal care without interference from mental symptoms."  (Id.)  Additionally, the ALJ found that Plaintiff only had mild difficulties in social functioning, was able to shop in public, and maintained "close relationships with cousins, brothers, and . . . had a girlfriend during the period he alleges he has been disabled."  (Id.)  Furthermore, the ALJ noted that Plaintiff did "not demonstrate the memory or concentration deficits indicative of greater me[n]tal limitations, he spell[ed] words correctly on examination, [was] able to perform serial 7s, and d[id] not demonstrate grossly aberrant behavior that would indicate significant social dysfunction."  (Id. at p. 20.)  As far as Plaintiff's cognitive capabilities, the ALJ found that Plaintiff's cognitive functioning was higher than presented to consultative examiners because of Plaintiff's incredible presentation to examiners.  (Id. at p. 21.)  Specifically, the ALJ pointed to Plaintiff's inaccurate presentation to consultative examiners regarding his history of drug and alcohol abuse and his literacy levels.  (Doc. 10-2, pp. 18, 20–21.)

Accordingly, this Court finds that ALJ Mason did consider Plaintiff's mental impairment under Listing 12.05C and found that Plaintiff did not meet the diagnostic criteria. This finding is supported by substantial evidence, and this enumeration of error is without merit.

## V. Whether the ALJ's RFC Finding is Erroneous

Plaintiff also asserts that the RFC assessment is erroneous because ALJ Mason did not include Plaintiff's mental impairments into the RFC finding. (Doc. 12, pp. 7–8.) Furthermore, Plaintiff contends that the ALJ erred by not including a limitation to simple work in the RFC. (Id.) Because of the failures, Plaintiff avers that the ALJ provided an "incomplete hypothetical to the vocational expert." (Id. at p. 7.)

Defendant responds that the ALJ properly considered Plaintiff's mental impairments by looking at the medical evidence from consultative examiners and other evidence of record. (Doc. 13, pp. 12–14.) Additionally, Defendant argues that, while the ALJ did not use the term "simple work," he did account for Plaintiff's mental limitations by restricting Plaintiff to "repetitive short cycle work." (Doc. 13, p. 12.)

An RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted. SSR 96-8p, 1996 WL 374184 (July 2, 1996). "An ALJ is not entitled to pick and choose through a medical opinion, taking only the parts that are favorable to a finding of nondisability." Kerwin v. Astrue, 244 F. App'x 880, 885 (10th Cir. 2007). The final determination of a plaintiff's RFC is reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d) & (e)(2).

ALJ Mason stated that he considered all symptoms and the extent those symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence

before determining Plaintiff's RFC.  (Doc. 10-2, p. 17.)  ALJ Mason found that the substantial evidence revealed Plaintiff had the RFC to perform sedentary work but noted that Plaintiff cannot engage in constant reaching or any overhead reaching with the left upper extremity, "is limited to repetitive short cycle work and should avoid concentrated exposure to dust, fumes, gases, and poor ventilation and unprotected heights as well as dangerous machinery."  (Id.)

In coming to this conclusion, ALJ Mason determined that Plaintiff's account regarding the intensity, persistence, and limiting effects of his symptoms were not credible and not supported by the objective medical evidence.  ALJ Mason provided five separate reasons why Plaintiff's accounts were not credible.

First, Plaintiff inconsistently characterized his post-stroke physical recovery to different health care professionals.  The ALJ observed that Plaintiff told health professionals that he was confined to a wheelchair for one year after his stroke in 2007.  (Id. at p. 18.)  However, at various other points, Plaintiff indicated that he was able to walk as early as one month after his stroke. (Id.)

Second, the ALJ noted vast inconsistencies in Plaintiff's statements to physicians regarding his drug and alcohol use.  The ALJ observed that, in February 2008, Plaintiff denied any drug and alcohol abuse, but in May 2008, stated that he had a history of marijuana and alcohol abuse that ended in 2007.  (Id.)  In October 2012, Plaintiff admitted to continued substance abuse that ended in February 2008, but several weeks later, admitted to continued substance abuse through November 2012.  (Id.)  In August 2013, Plaintiff admitted to using cocaine and abusing marijuana and alcohol until 2012.  Finally, in March 2014, Plaintiff tested positive for marijuana.  The ALJ determined that this false history "undermine[d] the credibility of his statements and presentation to physicians generally."  (Id.)

Third, the ALJ observed that Plaintiff's physicians regularly told him that smoking cessation would decrease the severity of his coronary artery disease symptoms. (Id.) Thus, the ALJ determined that Plaintiff's coronary artery disease was not as debilitating as Plaintiff presented, because he chose "to continue to smoke both marijuana and tobacco." (Id.)

Fourth, ALJ Mason looked at Plaintiff's admitted activities of daily living and found them to be inconsistent with Plaintiff's statements regarding his limitations. The ALJ pointed to Plaintiff's inconsistencies regarding how long he could walk. (Id. at pp. 18–19.) Specifically, the ALJ referred to Plaintiff's accounts that, before the heart attack, he could only walk for two minutes at a time, and yet, after the heart attack, was able to walk for several miles. (Id.)

Finally, ALJ Mason determined Plaintiff's accounts were incredible because they were inconsistent with the objective medical evidence. The ALJ specifically discussed Plaintiff's evaluations with examiners regarding his mental impairments.[4] (Id. at pp. 19–20.) ALJ Mason noted that Plaintiff's treating mental health care providers consistently found no abnormalities. (Id. at p. 19.) Additionally, ALJ Mason noted that Plaintiff did "not demonstrate the memory or concentration deficits indicative of greater me[n]tal limitations, he spell[ed] words correctly on examinations, [was] able to perform serial 7s, and d[id] not demonstrate grossly aberrant behavior that would indicate significant social dysfunction." (Id. at p. 20.)

The ALJ also considered the opinions of consultative psychological examiners in making the RFC determination. For instance, after considering Dr. Theodore Daniel's opinion, the ALJ determined that Plaintiff's "constricted affect and depressed mood credibly prevent him from performing more than simple and routine work. However, there is no evidence that the claimant has difficulty completing production tasks or following work routines . . . ." (Id.) Additionally,

---

[4] ALJ Mason discussed at length the objective medical evidence regarding Plaintiff's physical impairments. However, as Plaintiff only contests the ALJ's determination of his mental impairments, the Court will only focus on those portions of the ALJ's decision.

after evaluating Dr. John Whitley's opinion, ALJ Mason found that Plaintiff's "constricted affect and depressed mood would prevent him from performing more than simple work," but Plaintiff was not illiterate. (Id.) ALJ Mason noted that Plaintiff "completed a complex function report . . . and was able to complete Disability Reports without issue and verify that he completed them himself." (Id.) The ALJ also afforded no weight to state agency psychological experts who opined that Plaintiff would be "unable to perform more than simple and routine work." (Id.) The ALJ explained that he disregarded this opinion because the experts based their limitations on Plaintiff's self-reports, which the ALJ previously found incredible. (Id.)

Thus, the record shows that the ALJ specifically considered Plaintiff's mental impairments when formulating the RFC and accounted for them by limiting Plaintiff to repetitive, short cycle work. Substantial evidence supports this determination. ALJ Mason considered the objective medical and other evidence of record, as well as Plaintiff's subjective allegations. He clearly explained why certain sources, including Plaintiff's account of his limitations, received less or more weight, and why he determined Plaintiff was capable of performing repetitive, short cycle work as opposed to only "simple work." The ALJ then presented this RFC to the vocational expert. Accordingly, this enumeration of error is also without merit.

**VI.     Whether Substantial Evidence Supports the ALJ's Determination that Plaintiff Can Perform a Significant Number of Jobs in the National Economy**

Plaintiff argues that the ALJ erred because he did not assess whether a significant number of jobs Plaintiff can perform exist in the region where he lives or any other region in the country. (Doc. 12, p. 10.) Defendant responds that the ALJ did not have to evaluate whether a significant number of jobs exist in Plaintiff's region, and instead, the ALJ properly relied on the number of jobs in the national economy. (Doc. 13, pp. 16–17.)

Under the Act, an individual is disabled if he is unable to do his previous work and cannot "engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(1)(B). The Act further defines "work which exists in the national economy" to mean "work which exists in significant numbers either in the region where such individual lives or in several regions of the country." Id. Significantly, the Eleventh Circuit Court of Appeals has "never held that a minimum numerical count of jobs must be identified in order to constitute work that 'exists in significant numbers' under the statute and regulations." Atha v. Comm'r of Soc. Sec., 616 F. App'x 931, 934 (11th Cir. 2015). Instead, "the 'appropriate focus under the regulation is the national economy,' not the local economy in which the claimant lives." Id. (quoting Allen v. Bowen, 816 F.2d 600, 603 (11th Cir. 1987)).

"[B]ecause an ALJ's finding as to the existence of a sufficient quantity of jobs is a finding of fact reviewed under the substantial evidence standard, we [cannot] reweigh the evidence or 'substitute our judgment for that of the Secretary.'" Id. (quoting Allen, 816 F.2d at 602). An ALJ's reliance on the vocational expert provides such substantial evidence so long as a hypothetical question is posed which incorporates all of the claimant's impairments. Id.; Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999) (holding that the ALJ may rely on the vocational expert's testimony as substantial evidence to support a determination of no disability); Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002) (per curiam) ("In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments.") However, the hypothetical need only include the impairments which the ALJ accepts as true. McKay v. Apfel, No. 97-C-1548-N, 1999 WL

1335578, *7 (M.D. Ala. Dec. 9, 1999) (citing <u>Haynes v. Shalala</u>, 26 F.3d 812, 815 (8th Cir. 1994)).

Here, ALJ Mason relied on vocational expert James Waddington's testimony that Plaintiff could perform the job requirements of semiconductor assembler, surveillance systems monitor, and credit reference clerk. Mr. Waddington further testified that, in the national economy, there are: 86,000 jobs for semiconductor assembler; 80,000 jobs for surveillance systems monitor; and 10,000 jobs for credit reference clerk. (Doc. 10-2, pp. 22, 61–62.) Mr. Waddington provided this testimony in response to ALJ Mason's specific hypothetical asking for jobs in the national economy that an individual with Plaintiff's RFC could perform. (Doc. 10-2, pp. 60–61.) The ALJ also questioned Mr. Waddington at various points during his testimony to ensure that the proposed jobs were in line with an individual who had limited education, required semi-skilled work, and could not constantly reach with his left upper extremity. (<u>Id.</u> at pp. 61–63.)

Accordingly, the Court finds that substantial evidence supports the ALJ's determination that significant jobs exist in the national economy that Plaintiff can perform. This enumeration of error is without merit.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** that the Court **AFFIRM** the decision of the Commissioner. I also **RECOMMEND** that the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within **fourteen (14) days** of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address

any contention raised in the pleading must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action.

The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence. Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 23rd day of February, 2018.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA